IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

Filed at 5:00 P. M
8/18 WDS , 2014
Deputy Clerk, U.S. District Court
Middle District of Georgia

CRANDALL O. POSTELL

    Plaintiff,

v.

JOHN C. PRIDGEN,
Chief Superior Court Judge,
Cordele Judicial Circuit,
in his official and individual
capacities,

ROBERT W. CHASTEEN, JR.,
Superior Court,
Cordele Judicial Circuit,
in his official and individual
capacities,

T. CHRISTOPHER HUGHES,
Superior Court,
Cordele Judicial Circuit,
in his official and individual
capacities,

JEAN H. ROGERS,
Clerk of Court,
Cordele Judicial Circuit,
in her official and individual
capacities,

PEGGY S. HARALSON
as Executor of the ESTATE OF
DONNIE R. HARALSON, deceased,
Sheriff of Crisp County,
in his official and individual
capacities,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION
No. 1:14-CV-122 (WLS)

JURY TRIAL
DEMANDED

## ORIGINAL COMPLAINT FOR DAMAGES

**COMES NOW**, the Plaintiff CRANDALL O. POSTELL, pro se and files this

Original Complaint for Damages against Defendants JOHN C. PRIDGEN, ROBERT W.

CHASTEEN, JR., T. CHRISTOPHER HUGHES, JEAN H. ROGERS, and PEGGY S.

HARALSON as Executor of the ESTATE OF DONNIE R. HARALSON for violation of

civil conspiracy, First, Fourth, Fifth, and Fourteenth Amendment to the United States

Constitution, 42 U.S. Code § 1983, 1985, 1988 and Article I, Section I of the Georgia

Constitution and states as follows:

### JURISDICTION AND VENUE

1.     This Court has proper jurisdiction over the parties to this action and over

the subject matter pursuant to Title 42 U.S. Code § 1983 and 1985 for violations of the

First, Fourth, Fifth and Fourteenth Amendment to the United States Constitution and

Georgia Constitution and other applicable law.

2.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because at

least one Defendant resides in this judicial district. This district is also an appropriate

venue for this action under 28 U.S.C. § 1391(b)(2) because all of the events or omissions

giving rise to the claims asserted herein occurred in this judicial district. Furthermore, the

Crisp County Law Enforcement Center is situated within the district and divisional

boundaries of the Middle District of Georgia, Albany Division.

3.     This is an action for damages in excess of $75,000.00, both declaratory

and injunctive relief in order to remove Defendants from their official position for civil

conspiracy closing LEC courtroom door to Plaintiff in violation of Plaintiff's

Constitutional Rights, exclusive of attorney's fees and costs.

## PARTIES

PLAINTIFF

4.     Plaintiff CRANDALL O. POSTELL is a resident of Cordele, Georgia and

submits himself to the jurisdiction of this Court.

DEFENDANTS

5.     Defendant JOHN C. PRIDGEN (Defendant Pridgen), a resident of Crisp

County, he is the Chief Judge of the Cordele Judicial Circuit. Defendant Pridgen presides

over proceedings in the Superior Courts of the Cordele Judicial Circuit. Defendant

Pridgen is sued in his official and individual capacities.

6.     Defendant ROBERT W. CHASTEEN, JR. (Defendant Chasteen), a

resident of Ben Hill County, he is a Superior Court Judge of the Cordele Judicial Circuit.

Defendant Chasteen presides over proceedings in the Superior Courts of the Cordele

Judicial Circuit. Defendant Chasteen is sued in his official and individual capacities.

7.     Defendant T. CHRISTOPHER HUGHES (Defendant Hughes), a resident

of Ben Hill County, he is a Superior Court Judge of the Cordele Judicial Circuit.

Defendant Hughes presides over proceedings in the Superior Courts of the Cordele

Judicial Circuit. Defendant Hughes is sued in his official and individual capacities.

8.     Defendant JEAN H. ROGERS (Defendant Rogers), a resident of Crisp

County, she is the Clerk of Court of the Cordele Judicial Circuit. Defendant Rogers is

sued in her official and individual capacities.

9.     Defendant PEGGY S. HARALSON as Executor of the ESTATE OF

DONNIE R. HARALSON (Defendant Haralson), deceased. The Defendant Haralson was

a resident of Crisp County; at the time of all allegations Defendant Haralson was the
Sheriff of Crisp County and is sued in his official and individual capacities.

## FACTUAL BACKGROUND
(Racism Conspiracy)
(Haralson, Pridgen, and Rogers)

10.     In December of 1994, Plaintiff and his fiancée Jackie Clark were looking
to purchase their first home. They spoke with a Realtor in Cordele about the type of home
they wanted to purchase. The Realtor expressed that he knew the perfect home that was
for sale and explained that he would give them a call after speaking with the homeowner
to inform when and what time they could see the home.

11.     The next day the Realtor informed Plaintiff that the homeowner refused
their request because he didn't want to sell his home to blacks. Plaintiff requested the
name of the homeowner and the Realtor stated, "Sheriff Donnie Haralson."

12.     Plaintiff was saddened that the Sheriff felt that way especially since
Plaintiff actually liked the Sheriff as did a lot of other blacks in Cordele who had no idea
that the Sheriff was racist. Plaintiff had a few choice words for the Sheriff and told the
Realtor to tell the Sheriff.

13.     On the 29th day of January, 1995 Plaintiff was traveling north on highway
41 about a mile outside of Cordele when he was approached by a sheriff deputy traveling
south on highway 41 around four o'clock p.m.

14.     The deputy made a u-turn and engaged his lights to make a traffic stop,
Plaintiff pulled over and parked his car. The deputy inquired as to where Plaintiff was
headed and requested driver's license and insurance. Plaintiff produced his license with
insurance identification.

4

15.     Plaintiff asked Deputy Tommy Kimbrell the purpose for the stop; deputy Kimbrell stated he saw that Plaintiff had a defective headlamp. Plaintiff informed deputy Kimbrell its daylight no headlamp needed. Deputy Kimbrell stated never mind that I see you have a defective tail light with reflector tape on it.

16.     Plaintiff informed Deputy Kimbrell that he is a certified peace officer and produced identification to that effect. Deputy Kimbrell asked "what department you work at."

17.     Plaintiff informed Deputy Kimbrell that he "used-to work at Warwick Police Department." Plaintiff was very clear that he no longer worked at Warwick Police Department. Plaintiff thinks he resigned from the Warwick Police Department November of 1994.

18.     At that time Plaintiff had in his possession a photo badge from the Warwick Police Department that Plaintiff had not yet returned to Chief Corbin. Plaintiff never produced the Warwick Badge to Deputy Kimbrell.

19.     Deputy Kimbrell went back to his patrol car to write a warning ticket, when he returned he stated he had central to check with Cowboy (Warwick Police Chief Henry Corbin) to see if Plaintiff was employed with Warwick Police Department.

20.     Plaintiff informed once again that he no longer worked at Warwick Police Department.

21.     Deputy Kimbrell couldn't write a legal citation for any violation because Plaintiff had not violated any laws.

22.     On February 4, 1995, Plaintiff was traveling north on 11ᵗʰ Street around 1:00 a.m. when he was pulled over by Cordele Police and arrested. Plaintiff was held

until Crisp County Sheriff's deputy arrived to inform Plaintiff that a warrant for his arrest
for Impersonating an Officer was issued.

23. Plaintiff was transported to the Crisp County Detention Center by the
Sheriff Deputy and booked and charged with Impersonating an Officer (O.C.G.A. § 16-
10-23). Imagine that, Plaintiff was a Certified Peace Officer.

24. Defendant Haralson at that time was the chairman of P.O.S.T. Council,
and used his position as chairman to initiate an investigation on Plaintiff that lasted over
two years.

25. The Council eventually revoked Plaintiff's certification for one speeding
ticket that Plaintiff received during his tenure with Warwick Police Department.

26. The Rules of Georgia Peace Officer Standards And Training Council; 464-
3.05(e) Notification of Disciplinary Action; minor traffic citations written to a certified
officer need not be reported to the Council.

27. Defendant Pridgen at that time was the District Attorney for the Cordele
Judicial Circuit; his office requested that Plaintiff submit his Peace Officer Certification
and the charge would be dropped.

28. Plaintiff refused, and immediately requested the state to produce the video
of the traffic stop. Defendant Pridgen and Plaintiff argued on the Courthouse steps;
Plaintiff had request for almost two years for the state to produce the video tape.

29. Defendant Pridgen stated "I never produced a video traffic stop for
anyone and wasn't about to start." Strong words were spoken between Defendant Pridgen
and Plaintiff.

30.     Four days before trial the state finally produced the video traffic stop, the video was without sound. Plaintiff needed the sound in order to prove no crime was committed.

31.     The morning of trial before Judge G. Mallon Faircloth, Plaintiff was without counsel, the following colloquy was elicited at page 11, beginning at line 10:

THE COURT:          Mr. Postell, do you have any questions you wish to pose to the panel?

MR. POSTELL:        Is it possible that we could wait a little bit for my attorney to arrive? He hasn't got here just yet. Is it possible, sir?

THE COURT:          Well, we can go on to the next panel and I'll consider calling these 12 back. Please return to your seats.

[PANEL ONE RETURNS TO SEATS.]

THE COURT:          Call the next 12 jurors, please.

[PANEL TWO SEATED IN JURY BOX.]

THE COURT:          Ms. Fallin, you may proceed for the State.

32.     The following colloquy was elicited at page 12, beginning at line 5:

THE COURT:          Mr. Postell, do you wish to pose any questions to this panel?

MR. POSTELL:        I'm still waiting on my attorney, sir.

THE COURT:          All right. I have to advise you that if we complete the panel before he arrives, we're going to go ahead and select 12 to try the case.

MR. POSTELL:        Could you repeat that? I couldn't hear you.

7

THE COURT:        If we complete examining the panel of 30 before your

attorney arrives, I intend to go ahead and select 12 through the legal process to sit as a

jury and we'll start the trial, and so if you have any questions you would like to ask, you

may do so. You don't have to.

MR. POSTELL:        Yes, sir, just a minute, sir.

THE COURT:        This questioning is to determine whether or not these jurors

have any predisposition, leaning, bias or prejudice which would make them less than a

fair and impartial juror to start the trial of this case. Limit your questions to those

Page 13, lines 1:

subjected, please.

MR. POSTELL:        Yes, sir. Good morning, jury. I guess I have a few

questions. I'm going to be a little slow at this because I've never done this type of

process.

Do any of you here - - are any of you related to anybody in law enforcement?

Could you raise your hand, please? Who are you related to?

33.    After Plaintiff picked his jury, Plaintiff's counsel arrived.

34.    The jury consisted of ten whites and two blacks; one black male who

worked at the law enforcement center and the other black female was over 65 years of

age.

35.    The jury found Plaintiff guilty of Impersonating an Officer, a crime

Plaintiff didn't commit.

36.    Plaintiff requested Mrs. Wanda Smith, Judge Faircloth's court reporter to

transcribe the trial transcript.

37.     After receiving the trial transcript, Plaintiff noticed Mrs. Smith failed to properly transcribe the trial transcript.

38.     Judge Faircloth had Mrs. Smith to delete or not transcribe the trial transcript the way in which it was stated.

39.     After Plaintiff stated "no" to Judge Faircloth, Judge Faircloth grew angry and stated; "either you pick them or I'll pick them for you." After that outburst Plaintiff was forced to pick his own jury.

40.     Defendant Haralson conspired with Defendant Pridgen and Defendant Pridgen conspired with Defendant Rogers to deprive Plaintiff of his Constitutional Rights, a violation of 42 U.S. Code § 1983.

41.     Defendant Haralson wanted badly to take away Plaintiff's Peace Certification, so he conspired with Defendant Pridgen to get a conviction against Plaintiff, and in order for Defendant Pridgen to get a conviction he needed the help of Defendant Rogers to "stack the deck" with majority whites and people she knew would vote in favor of the prosecution.

42.     Defendant Haralson may or may have not always been racist; on May 4, 1975, his father was unarmed and killed on the job by Roy Lee Patterson, a black man who only spent a little over 10 years in prison on two consecutive life sentences for killing State Trooper Young and Dispatcher W.R. Haralson Defendant's father.

43.     Defendant Haralson's father was shot three times in the stomach. Plaintiff can't image how that made Defendant Haralson feel. Defendant Haralson directed all his frustration to certain blacks and Plaintiff just so happen to fall in that category by asking Defendant Haralson to see his house, which was for sale.

## FACTUAL ALLEGATIONS
(Closed Courtroom Conspiracy)
(Pridgen, Chasteen, Hughes & Haralson)

44.     THE STATE FAILED US! The State of Georgia has a duty to remove its biggest liability from the bench, let us examine why.

45.     Defendant Pridgen is Cordele's biggest crook.

46.     On March 23rd, 2003 the Crisp and Ben Hill County Branches of the National Association for the Advancement of Colored People (NAACP) assisted Plaintiffs Kelvin Hampton, Eddie P. Montford, Eric Sailor, and Rodney Paul to file a civil rights lawsuit which challenged closed courtrooms in the Bell Hill and Crisp County Law Enforcement Centers and to address the Circuit's inadequate indigent defense system (Public Defender's office) against Judge Whitfield R. Forrester and Judge John C. Pridgen, et al.

47.     On August 16, 2004 the law Office of the Southern Center for Human Rights that represented the Plaintiffs dropped the lawsuit which was a massive mistake. Defendants Judge Forrester and Judge Pridgen maintained that the public's access to criminal proceedings in jail courtrooms was, and would remain, open and unobstructed. Imagine that! The Defendants only had to state "that the public's access to criminal proceedings in jail courtrooms was, and would remain, open and unobstructed." This was the reason for the dismissed complaint.

48.     Once the claim was dismissed the Defendants in *Hampton v. Forrester*, Civil Action No. 03V-118 (Crisp County Super. Ct. Aug. 16, 2004), Judge Forrester and Judge Pridgen immediately reinstituted closure of the courtrooms and continued for over eight years.

49.     It wasn't until the 21st of June, 2012 when the same attorney, Stephen Bright with the Southern Center for Human Rights filed a Class Action Lawsuit on behalf of Beverly Fuqua, Joyce Scales, Virginia Stillwell Goodman, and Reverend James Davis, III against Defendant Judges Chief Judge John C. Pridgen, Judge Robert W. Chasteen, Jr., Judge T. Christopher Hughes, and Sheriff Donnie Haralson, et al., for the same violations of 2003; closed courtrooms.

50.     Once again the Plaintiff's Representative Stephen Bright of the Southern Center for Human Rights dropped the ball, and on November 26, 2013, the lawsuit was dismissed, the parties reached an agreement to stop using the Law Enforcement Center (LEC) courtrooms for criminal proceedings, except in limited circumstance which will be detailed in case-specific orders with findings as to why the use of such courtrooms is necessary in a specific criminal case.

51.     The parties also agreed that the Defendant Judges Chief Judge John C. Pridgen, Judge Robert W. Chasteen, and Judge T. Christopher Hughes will pay a reduced amount of fees in the amount of $40,000.00 (which went to the attorneys, none for the plaintiffs). In doing so Defendants do not agree that they acted outside of their jurisdiction within the meaning of 42 U.S.C. § 1988.

52.     Defendant Pridgen conspired with Defendant Haralson, Defendant Chasteen and Defendant Hughes to deprive the public of their Constitutional Rights which is a violation of 42 U.S. Code § 1983.

53.     Defendants Pridgen and Haralson had the authority to make the necessary decision to build the courtroom at the Crisp County LEC that occupies about twenty-five seats. The Sheriff's Deputies placed pretrial detainees in two rows with a moveable

11

partition divides these seats from five chairs that are purportedly available for the public
and families.

54.     At the time when this courtroom was designed and built at the LEC, the
old courthouse downtown was being used. The distance between the LEC and the old
courthouse is approximately 3.2 miles and it takes less than six minutes to drive.

55.     Defendants Pridgen, Chasteen, and Hughes are the only official with the
authority to make the decision to bring twenty detainees to fill up the seats in the LEC
courtroom leaving only five seats for the public and families. This was a calculated
decision to deprive the citizens of their Constitutional Rights.

56.     Defendant Judges could have used a time pattern to bring the detainees in
pairs of threes or fours. On March 21, 2011 in an e-mail to Terry L. Mills, Ph.D. Dean
and Professor of Sociology at Morehouse College, Defendant Hughes stated; "Even
before I received your letter, I realized we had a problem. After arraignments last week I
asked the head of courtroom security to limit the number of defendants in the courtroom
to no more than six for security reasons and so that there would be more seating for
family and others. I will pass along a copy of your letter to the other judges in the circuit
so they also will be aware of the issue." (See Dean's letter attached as Exhibit "A",
Defendant Hughes's e-mail attached as Exhibit "B", and Affidavit of Carl N. Ringgold
attached as Exhibit "C").

57.     A year later, on March 13, 2012 Mrs. Virginia Stillwell Goodman went to
the Crisp County Jail to see her jailed nephew's court hearing. When she asked a deputy
if she could enter the courtroom, she was told to wait outside until her nephew's case was

called. Though she sought to view other proceedings, she was forced to wait in the hallway for three hours before she was allowed into the courtroom.

58. Defendant Judges Pridgen, Chasteen, and Hughes has authorized, condoned, ratified, approved, and/or knowingly acquiesced in the policy of closing the Crisp County Law Enforcement Center courtroom to members of the public and families.

59. Defendant Judges Pridgen, Chasteen, Hughes and Defendant Haralson knew or should have known that requiring sheriff's deputies to sit at the door to inquire of each member of the public to explain why he or she wishes to enter the courtroom was a violation of their Constitutional Rights.

60. Plaintiff Postell who attempts to watch Superior Court guilty plea proceedings, arraignments, calendar calls, bond hearings, sentencing, and other criminal and civil proceedings in the Crisp County Jail courtroom was routinely met by sheriff's deputy Charles Burrough who for the Defendants closed public hearings for a host of reason- none of which are legally sufficient.

61. Neither the District Attorney's office nor any defendant in a criminal case has moved for closure in *any* case and demonstrated that closure is (1) essential to preserve higher values than the constitutional interests of Plaintiff, and (2) narrowly tailored to serve those values as required by *Press-Enterprise CO. v. Superior Court* (Press Enterprise I), 464 U.S. 501, 510 (1984). Nor has any party established by "clear and convincing proof" that closing a proceeding is the only means to avoid a "clear and present danger" to the moving party's asserted interest. *See R.W. Page Corp. v. Lumpkin*, 249 Ga. 576, 579, 292 S.E.2d 815 (1982). Nor have there been written court findings to support the closing of a particular case. Far from being narrowly tailored, closure is the

rule at *all* hearings taking place in the courtroom at the Crisp County Law Enforcement Center.

62.     The closing of this courtroom to Plaintiff and to members of the public violates the First and Fourteenth Amendment to the United States Constitutional and Georgia Constitution. It violates the defendants in the Cordele Judicial Circuit Sixth and Fourteenth Amendment Rights and the rights guaranteed by Article I, § 1, Paragraphs V and XI of the Georgia Constitution to both the general public and defendants.

63.     Defendant Haralson was directly responsible for the daily management, administration, and operation of the Crisp County Jail. In Defendant Haralson's capacity as Sheriff, he caused, created, participated in, acquiesced in the policy of closing the courtroom door, as described above.

64.     The Georgia Judicial Qualifications Commission (JQC) had knowledge of the Defendant Judges' actions regarding a conspiracy to deprive the public and Plaintiff of his Constitutional Rights but did absolutely nothing to remove these corrupt judges from the bench.

65.     The JQC did in fact issue an opinion concerning public access to courtrooms and court proceedings. The JQC states in Opinion 239 that judges are responsible to ensure that the public has unfettered and unobstructed access to court proceedings (Any member of the public who attempts to enter a proceeding should gain entry without being questioned).

66.     The JQC should be dismantled and replaced with competent individuals who would ensure that any violation of a citizen's Constitutional Rights would be thoroughly investigated and *any* corrupt judge would be removed and prosecuted.

## COUNT I

### FRAUD ON THE COURT
(Pridgen, Chasteen, Hughes, and Haralson)

### CONSPIRACY VIOLATION UNDER 42 U.S.C. § 1983

67.    Plaintiff re-allege each and every allegation contained in paragraphs 1

through 66 of this Complaint as if fully set forth herein.

68.    On November 4, 2013, Defendant Judges Chief Judge John C. Pridgen,

Judge Robert W. Chasteen Jr., and Judge T. Christopher Hughes entered into a

Settlement Agreement in *BEVERLY FUQUA et al. V. JOHN PRIDGEN et al.*, Civil

Action No. 1:12-cv-093(WLS) and signed into Order on November 26, 2013 (See

Settlement Agreement attached as Exhibit "D").

69.    The Terms of the Agreement are as follows:

II. h. (3)

> Stop using the Law Enforcement Center courtrooms for
> criminal proceedings, except in limited circumstances
> which will be detailed in case-specific orders with findings
> as to why the use of such courtrooms is necessary in a
> specific criminal case. (Defendant-Judges have already
> issued Standing Order 2013-01 to this effect and they agree
> to maintain and abide by that Order. See Exhibit C.)

70.    The Defendants' Standing Order 2013-01 was filed with the Clerk's office

on March 6, 2013 (See Standing Order 2013-01).

71.    When Defendant Judges Pridgen, Chasteen, and Hughes signed the

Settlement Agreement on November 4, 2013 they knew that they were committing Fraud

on the Court because the Defendant Judges never posted Standing Order 2013-01 at any

of the Courtrooms; instead they posted Standing Order 2013-02 with a different name

15

and substance from Standing Order 2013-01 (See Standing Order 2013-02 attached as

Exhibit "E").

72.    The Standing Order 2013-02 was signed on March 19, 2013, Defendant

Judges Pridgen, Chasteen, and Hughes knew that agreeing to post Standing Order 2013-

01 and not mentioning the 2013-02 Standing Order was Fraud on the Court.

73.    The Defendant Judges Pridgen, Chasteen, and Hughes' Settlement

Agreement has a clause that states;

II. j.

> If Plaintiffs form a reasonable belief that Defendants,
> including Defendant Haralson and Defendant-Bailiffs, are
> in violation of this Settlement Agreement, Plaintiffs shall
> give notice to Defendants in writing, and shall state with
> specificity the alleged noncompliance. If Defendants have
> not acted to cure such noncompliance within 30 days,
> Plaintiffs may seek contempt from the District Court or, if
> the 18 month term of the consent order has expired,
> exercise their statutory right to pursue preliminary or
> permanent injunctive relief under 42 U.S.C. § 1983, or they
> may file a complaint with the Georgia Judicial
> Qualifications Commission.

74.    This clause does not apply.  Defendant Judges Pridgen, Chasteen, and

Hughes entered the agreement deceiving the Court and the Plaintiffs knowing that they

were not in compliance with the terms of the agreement from commencement.  This is

Fraud on the Court.

75.    The Defendant Chief Judge John C. Pridgen conspired with Defendant

Judge Robert W. Chasteen and Defendant Judge T. Christopher Hughes to manipulate the

Court's jurisdiction by issuing a Standing Order to achieve a dismissal (moot),  which

was never implemented and is in violation of 42 U.S. Code § 1983.

76.     Defendant Judges actions trying to manipulate the Court's jurisdiction to achieve a dismissal and now committed Fraud on the Court to achieve a Settlement Agreement with Plaintiff Beverly Fuqua, et al. and has damaged Plaintiff and the public.

77.     The Defendant Chief Judge John C. Pridgen conspired with Defendant Judge Robert W. Chasteen and Defendant Judge T. Christopher Hughes to violated the public and Plaintiff's constitutional rights by agreeing with each other that they will hold presiding in the Crisp County LEC when they knew that it was designed to prevent the public and Plaintiff from being able to see *all* courtroom proceedings in violation of civil conspiracy under 42 U.S. Code § 1983.

78.     The Defendant Chief Judge John C. Pridgen conspired with Defendant Haralson to violated the public and Plaintiff's constitutional rights by designing a courtroom that will seat only twenty-five people and have the Sheriff's deputies fill two rows of seats with pre-detainees. Place a moveable partition which divided twenty chairs from five chairs that were purportedly available for the public in violation of civil conspiracy under 42 U.S. Code § 1983.

79.     Plaintiff has no faith in these corrupted Defendant Judges; the legal system in Cordele Georgia is absolutely dreadful.

WHEREFORE, Plaintiff seeks judgment from this Court as follows:

a.  Enter judgment in favor of Plaintiff against the Defendants;

b.  Issue a declaratory judgment that Defendants' acts violated Plaintiff's rights pursuant to 42 U.S. Code § 1983 the First, Fifth, and Fourteenth Amendments to the Constitution of the United States;

c. To declare that Defendant Judges Chief Judge John C. Pridgen, Judge Robert W. Chasteen, and Judge T. Christopher Hughes are in contempt of court for committing Fraud on the Court and in violation of 42 U.S. Code § 1983.

d. To declare that Defendant Judges Chief Judge John C. Pridgen, Judge Robert W. Chasteen, and Judge T. Christopher Hughes conspired to violate the public and Plaintiff's constitutional rights under 42 U.S. Code § 1983.

e. To declare that Defendant Chief Judge John C. Pridgen and Defendant Haralson conspired by designing the LEC courtroom to seat only twenty-five people and have the Sheriff's deputies fill two rows of seats with pre-detainees to limit the public from being able to watch public proceedings in violate of the public and Plaintiff's constitutional rights under 42 U.S. Code § 1983.

## COUNT II

## PRIVACY VIOLATION OF PLAINTIFF'S FIRST, FOURTH, FIFTH AMENDMENT TO THE U.S. CONSTITUTION, 42 U.S.C. § 1983
(Haralson)

### CLAIMS FOR DAMAGES AND RELIEF

80.     Plaintiff re-allege each and every allegation contained in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

81.     On March 4, 2013 at approximately 9:00 a.m. Plaintiff was at the Clerk's office at the Crisp County Courthouse researching cases.

82.     Plaintiff was approached by a Crisp County Deputy who requested Plaintiff to leave and go outside with him. Plaintiff was escorted outside the Clerk's

office and was informed by the Sheriff deputy that he had ran Plaintiff's license plate on his vehicle and learned that a warrant was issued for Plaintiff's arrest.

83.     Plaintiff was place in handcuffs and put inside the deputy's patrol car and taken to the Crisp County LEC where Plaintiff was booked and place in a holding cell.

84.     Houston County had issued a warrant for Plaintiff's arrest for failing to pay a speeding ticket.

85.     Plaintiff was then transported to the Houston County Jail where he paid the fine and was released.

86.     Plaintiff spent approximately six hours incarcerated due to Defendant Haralson's illegal search of running Plaintiff license plate. Defendant Haralson was without probable cause to run Plaintiff's license plate.

87.     Plaintiff was not operating his vehicle when the deputy ran the search. Plaintiff was not in his vehicle when the deputy ran the search.

88.     Because of Defendant Haralson's actions Plaintiff was not able to learn of the warrant through other means.

89.     Defendant Haralson discriminated against Plaintiff by not searching everyone's license plate that enter the courthouse parking lot and in violation of Plaintiff's First, Fourth, and Fifth Amendment to the constitutional under 42 U.S. Code § 1983.

WHEREFORE, Plaintiff seeks judgment from this Court as follows:

a.  Enter judgment in favor of Plaintiff against the Defendant Haralson;

b. To declare that Defendant Haralson is in violation of Plaintiff's First, Fourth, and Fifth Amendment to the constitutional under 42 U.S. Code § 1983;

c. To declare that Defendant Haralson discriminated against Plaintiff and is in violation of Plaintiff's constitutional rights under 42 U.S. Code § 1983;

d. Award Plaintiff compensation for Defendant Haralson's illegal acts, unlawful conduct, including emotional pain and suffering, anxiety, stress, depression, humiliation, and punitive damages in an amount to be determined by the jury at trial;

e. Award Plaintiff reasonable costs and attorney's fees;

f. Award Plaintiff such other and further relief as the Court may deem appropriate.

## COUNT III

### PRIVACY AND CONSPIRACY VIOLATION OF PLAINTIFF'S FIRST, FOURTH, FIFTH  AMENDMENT TO THE U.S. CONSTITUTION, 42 U.S.C. § 1983
(Pridgen & Rogers)

### CLAIMS FOR DAMAGES AND RELIEF

90.    Plaintiff re-alleges each and every allegation contained in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

91.    Plaintiff was charged with Impersonating an Officer on February 4, 1995, the State requested Plaintiff to produce the originals of Plaintiff's Peace Certification, Personal Photograph of Plaintiff, Certificate of Basic Mandate, Basic Traffic Radar Operator Certificate, etc.

92.     Plaintiff and the State's prosecutor agreed that once the trial is completed the documents would be returned to Plaintiff pursuant to the law.

93.     On January 9, 2007, Plaintiff filed a Motion for Release of Exhibit 1-8 (See Plaintiff's Motion attached as Exhibit "F").

94.     On January 10, 2007, Defendant Chief Judge John C. Pridgen denied Plaintiff's motion (See Order attached as Exhibit "G") without the state prosecutor's response.

95.     On October 23, 2007 Plaintiff filed a lawsuit against James Allen McKee for causing an accident that total Plaintiff's BMW 325ic convertible.

96.     Defendant Pridgen was assigned to hear the case. Plaintiff filed a motion for recusal which was denied.

97.     Plaintiff filed another motion different from the first motion to recuse and Defendant Pridgen failed to issue an Order.

98.     Trial was held on February 17, 2009 without the Defendant ever ruling on Plaintiff's Motion for Recusal.

99.     On June 27, 2012 Plaintiff was at the Clerk's office researching cases, without Plaintiff knowledge Defendant Rogers had an employee to log in the cases that Plaintiff was researching.

100.    Defendant Roger logged on three different files case number 03V-118, 07V-517 and 09V-169, that Plaintiff had viewed those files (See attached as Exhibit "H").

101.    On September 24, 2012 Sherry Steuerwald with Martin Show, LLP e-mailed Connie Hardegree, employee of Defendant Rogers, stated; "I received the docket

sheet in 07-V-517 by fax. I was wondering if you could explain an entry dated 6-27-2012
(the last one) that mentions Mr. Postell viewed this 09-V-169 and 07-V-517 and 03V-
118. What exactly does that mean? Thanks!" (See attached as Exhibit "I").

102.    The Defendant Chief Judge John C. Pridgen conspired with Defendant
Rogers to discriminate and violated Plaintiff's constitutional rights by keeping a tab on
everything Plaintiff researched in the Clerk's Office.

WHEREFORE, Plaintiff seeks judgment from this Court as follows:

a.  Enter judgment in favor of Plaintiff against the Defendants Pridgen
    and Rogers;

b.  To declare that Defendants Pridgen and Rogers is in violation of
    Plaintiff's First, Fourth, and Fifth Amendment to the constitutional
    under 42 U.S. Code § 1983;

c.  To declare that Defendants Pridgen and Rogers discriminated against
    Plaintiff and is in violation of Plaintiff's constitutional rights under 42
    U.S. Code § 1983;

d.  Award Plaintiff compensation for Defendants Pridgen and Rogers
    illegal acts, unlawful conduct, including emotional pain and suffering,
    anxiety, stress, depression, humiliation, and punitive damages in an
    amount to be determined by the jury at trial;

e.  Award Plaintiff reasonable costs and attorney's fees;

f.  Award Plaintiff such other and further relief as the Court may deem
    appropriate.

## COUNT IV

## EXCLUSION OF PLAINTIFF IN VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION, 42 U.S.C. § 1983
(Pridgen, Hughes, Chasteen & Haralson)

103.     Plaintiff re-allege each and every allegation contained in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

104.     On August 18, 2010, Plaintiff went to the Crisp County LEC to observe *all* proceedings civil and criminal, guilty plea proceedings, arraignments, calendar calls, bond hearings, sentencing, and *any* other proceedings at the LEC courtroom.

105.     Plaintiff arrived around 8:30 a.m. and was met with people standing in the hallway expressing discomfort and upset about not being able to see the proceedings. Plaintiff opened the door to the courtroom and was met by Sergeant Charles Burrough.

106.     Sheriff Deputy Burrough requested; "who did you come here to see," I told him the proceedings; he stated that I would have to wait. I could see at least two seats available.

107.     Defendant Chief Judge John C. Pridgen was on the bench ruling on a criminal matter. Defendant Pridgen looked over and we made eye contact and he witnessed me talking to deputy Burrough. Defendant Pridgen could see available seats but failed to allow Plaintiff to enter the courtroom.

108.     Plaintiff waited in the hallway just like everybody else, after about 30 minutes of waiting Plaintiff was allowed to enter to see defendant Ricky Bernard Hudson's bond hearing.

109.     On March 4, 2010, Plaintiff and his brother Michael Postell arrived at the LEC around 8:30 a.m. and attempted to enter the courtroom at the LEC to watch some of

the proceeding before Plaintiff's brother civil hearing to occur at 9:00 a.m. Plaintiff was met by deputy Burrough and informed we would have to wait until 9:00 a.m.

110.    Defendant Judge Hughes was on the bench presiding over other issues he observed Plaintiff and Plaintiff's brother talking with deputy Burrough, again the Judge and Plaintiff could see three available seats and other people outside waiting to enter the courtroom but the Defendant Judge Hughes did nothing to allow us in the courtroom.

111.    Plaintiff and his brother waited in the lobby with everyone else until 9:00 a.m. and then were allowed to enter the courtroom.

112.    Plaintiff experienced the same treatment in 2011 when Defendant Judge Hughes failed to allow Plaintiff to enter the LEC courtroom.

113.    On January 26, 2009, Plaintiff had a civil hearing scheduled at 9:00 a.m. in front of Defendant Judge Chasteen. Plaintiff attempted to enter the courtroom approximately 8:40 a.m. but was met by a Sheriff Deputy who informed Plaintiff that he would have to wait outside until the Deputy call for him. Again Plaintiff could see available seats but were not allowed to enter.

114.    Plaintiff experienced the same treatment in 2011 when Defendant Judge Chasteen failed to allow Plaintiff to enter the LEC courtroom.

115.    The First Amendment of the United States Constitution guarantees that courtrooms be open to members of the public. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (plurality opinion) (holding that media was improperly denied access to state trial), *id.* At 582 (White, J., concurring), *id.* At 584 (Stevens, J., concurring), *id.* at 598 (Brennan, J., joined by Marshall, J., concurring), *id.* at 599 (Stewart, J., concurring), *id.* at 604 (Blackmun, J., concurring). This includes pre- and

24

post-trial proceedings. *See Press-Enterprise Co. Superior Court (Press Enterprise II)*,
478 U.S. 1, 10 (1986) (holding the media and the public have a First Amendment right to
attend preliminary hearings in state court); *Press-Enterprise Co. v. Superior Court (Press
Enterprise I)*, 464 U.S. 501, 505 (1984) (holding the media and the public have a First
Amendment right to attend *voir dire* proceedings in state criminal cases).

116.    Because the vast majority of criminal cases in Crisp County end in guilty
pleas pleas prior to trial, these pretrial hearings, like preliminary hearings, provide "the
sole occasion for public observation of the criminal justice system." *Press-Enterprise II*,
478 U.S. at 12 (quoting *San Jose Mercury-News v. Municipal Court*, 30 Cal.3d 498, 511
(1982)). Moreover, the absence of a jury in these proceedings "makes the importance of
public access . . . even more significant." *Id.* at 13.

117.    Criminal hearings carry with them a presumption of openness that can
only be overcome "by an overriding interest based on findings that closure is essential to
preserve higher values and is narrowly tailored to serve that interest. " *Press-Enterprise I*,
464 U.S. at 510. Yet Defendant-Judges have failed to make *any* judicial findings
justifying the closed courtroom or particular cases in the Crisp County Jail. Defendant
Haralson's deputies have routinely and consistently denied Plaintiff and members of the
public access to criminal proceedings with the rare exception of allowing some family
members of a criminal defendant to sometimes see proceeding involving that defendant.

118.    The Crisp County Sheriff's deputies stood at the entrance of the jail
courtroom and question members of the public about their reasons for seeking entry to
the courtroom, regardless of available seats inside the courtroom. The deputies then

instruct members of the public that they cannot enter the courtroom at all if their loved

one enters a not guilty plea.

119.    The Defendant Judges and Defendant Haralson's actions, inactions,

customs, and practices alleged herein are acting under color of state law, have failed to

ensure that Plaintiff and the public were able to observe criminal proceedings in violation

of the right to public trials as guaranteed by the First Amendment of the United States

Constitution, as enforced through 42 U.S. Code § 1983 and other applicable law.

120.    Before a trial court may prevent the public from attending a criminal

proceeding:

> The party seeking to close the hearing must advance
> an overriding interest that is likely to be prejudiced,
> the closure must be no broader than necessary to
> protect that interest, the trial court must consider
> reasonable alternatives to closing the proceeding,
> and it must make findings adequate to support the
> closure.

*Presley*, 130 S. Ct. at 724 (quoting *Waller,* 467 U.S. at 48). Thus, these cases do not

allow the routine closing of judicial proceedings to the public, but allow closure only in

the exceptional case where there are compelling case-specific reasons for closure in that

particular case.

121.    Trial courts "are obligated to take every reasonable measure to

accommodate public attendance" at criminal proceedings. The trial court in the Crisp

County of the Cordele Judicial Circuit regularly violated this constitutional command.

Hearings were routinely and regularly closed to the public with the only exceptions being

made arbitrarily by Defendant Haralson's deputies who, acting in accordance with their

superiors' policy of exclusion, allow in certain relatives for the single proceeding involving their loved one as long as that person does not plead not guilty.

122.    The closure of all proceedings in the jail courtroom is a broad and blatant violation of the Sixth, as well as the First and Fourteenth Amendments.

123.    Plaintiff is aware that an agreement was reached with these Defendant Judges in a prior lawsuit, but these Defendant Judges lied and stated they did not close the courtroom door, failed to admit to violating the public and Plaintiff's constitutional rights.

WHEREFORE, Plaintiff seeks judgment from this Court as follows:

        a.  Enter judgment in favor of Plaintiff against the Defendants;

        b.  Issue a declaratory judgment that Defendants' acts violated Plaintiff's rights pursuant to 42 U.S. Code § 1983 the First and Fourteenth Amendments to the Constitution of the United

        c.  States;clare that Defendant Judges Chief Judge John C. Pridgen, Judge Robert W. Chasteen, and Judge T. Christopher Hughes are in violation of 42 U.S. Code § 1983.

        d.  To declare that Defendant Judges Chief Judge John C. Pridgen, Judge Robert W. Chasteen, and Judge T. Christopher Hughes conspired to violate the public and Plaintiff's constitutional rights under 42 U.S. Code § 1983.

## COUNT V

### EXCLUSION OF PLAINTIFF FROM THE COURTROOM IN VIOLATION OF ARTICLE, § 1, PARAGRAPH XI OF THE GEORGIA STATE CONSTITUTION
(Pridgen, Chasteen, Hughes & Haralson)

124.    Plaintiff re-allege each and every allegation contained in this Complaint as if fully set forth herein.

125.    Independent of the protections of the federal constitution, Article I, § 1, Paragraphs V and XI of the Georgia Constitution provides additional grounds compelling the opening of the door at the Crisp County Jail courtroom.

126.    The Georgia Supreme Court has determined that "Georgia law … regarding the public aspects of hearings in criminal cases is more protective of the concept of open courtrooms than federal law." *R.W. Page Corp.*, 249 Ga. 578, 292 S.E.2d at 819. The Court pointedly noted that although the federal constitution provides a defendant with a right to a public trial, "our state constitution point-blankly states that criminal trials *shall* be public." *Id.*, 292 S.E.2d at 819 (emphasis in original) (citing Art. I, Sec. I Para. XI of the Georgia Constitution). Absent "clear and convincing proof" that closing a hearing or trial to the public is the only means to avoid a "clear and present danger" to the moving party's asserted constitutional rights, the courtroom doors are to be open. *Id.* At 579, 292 S.E.2d at 820.

127.    By their actions, inactions, customs, and practices alleged herein, Defendants Pridgen, Chasteen, Hughes, and Haralson, acting under color of state law, have failed to ensure that Plaintiff and the public were able to attend criminal proceedings in violation of the right to public trial as guaranteed by the First and Fourteenth Amendments to the United States Constitution, and Article I, Section I, Paragraph XI of the Georgia Constitution.

## **LITIGATION EXPENSES**

128.    Plaintiff re-allege each and every allegation contained in this Complaint as if fully set forth herein.

129.    Plaintiff is entitled to recover his expenses of litigation, including the hiring of an expert and attorney with reasonable attorneys' fees, pursuant to 42 U.S. Code § 1988.

## PRAYER FOR DAMAGES AND RELIEF

WHEREFORE Plaintiff respectfully requests damages for Defendants' violations of Plaintiff's civil and legal rights as follows:

a.     Order trial by jury on all claims triable;

b.     Enter judgment in favor of Plaintiff against all Defendants;

c.     To declare that Defendants have violated the First Amendment rights of Plaintiff to attend Superior Court hearings in the Crisp County jail courtroom;

d.     To declare Defendants failed to make any findings justifying the closure of the Crisp County jail courtroom door;

e.     To declare Defendants' denial of constitutional access to Superior Court hearings at the Crisp County jail courtroom has caused Plaintiff to suffer irreparable harm;

f.     Issue a declaratory judgment that Defendants' acts violated Plaintiff's rights pursuant to the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, 42 U.S. Code § 1983, and Georgia Constitution;

g.    Issue an injunction requiring Defendant Pridgen to comply with
constitutional, statutory, administrative, contractual and ethical
obligations, as set forth above;

h.    Issue a writ of mandamus to compel Defendant Pridgen to perform his
clear constitutional, statutory, administrative, contractual and ethical
duties, as set forth above;

i.    Order Defendants to make Plaintiff whole by providing for any and all
monetary damages to be proven at trial and/or provided by law, jointly and
severally, in an amount to be determined by the enlightened conscious of a
jury as will fully compensate Plaintiff for violation of Plaintiff's
Constitutional Rights;

j.    Grant Plaintiff punitive damages;

k.    Grant Plaintiff prejudgment interest;

l.    Award Plaintiff the costs of this action and reasonable attorney's fees; and

m.    Grant such additional relief as this Court deems proper and just.

## REQUEST FOR JURY TRIAL

Plaintiff requests that the matters set forth in this Original Complaint for Damages
be tried by jury.

Respectfully submitted this 18th day of August, 2014.

CRANDALL O. POSTELL, pro se
311 1st AVE. West, Apt. A
Cordele, Georgia 31015
(229) 699-0487